# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

**CONSUELO TORRES,**

             **Plaintiff,**

**-vs-**                                   **Case No.  2:11-cv-538-FtM-99DNF**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

             **Defendant.**

_____/

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      Plaintiff, Consuelo Torres, seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her claim for Disability Insurance

Benefits.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr."

followed by the appropriate page number), and the parties filed legal memoranda in support of their

positions.  For the reasons set out herein, it is respectfully recommended that the decision of the

Commissioner be Affirmed pursuant to 42 U.S.C. § 405(g).

**I.**      **Social Security Act Eligibility, Procedural History, and Standard of Review**

      The law defines disability as the inability to do any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve months. 42

U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the

claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.

### A.   Procedural History

On December 8, 2005, Plaintiff applied for a period of Disability and Disability Insurance Benefits ("DIB"), alleging her disabling condition began on November 5, 2003. (Tr. 23). The claim was denied initially on May 11, 2006, and upon reconsideration on September 27, 2006. (Tr. 308). On October 25, 2006, Plaintiff filed a Request for Hearing by an Administrative Law Judge ("ALJ"). (Tr. 76-79, 308). The hearing was originally scheduled for January 18, 2008, but was continued and held on March 11, 2008, in Miami, Florida. (Tr. 80-83). The ALJ denied the Plaintiff's claims for DIB on April 1, 2008, because he found ". . . the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act . . . " (Tr. 316).  On May 21, 2008, the Plaintiff filed a Request for Review of the ALJ's decision. (Tr. 324). The Appeals Council vacated the ALJ's decision on April 20, 2009, and remanded the case for further proceedings[1]. (Tr. 317-320).

Upon remand a second Hearing was scheduled with the ALJ for June 15, 2009. Plaintiff appeared and testified along with an impartial vocational expert ("VE"). (Tr. 23, 457-490). On August 10, 2009, the ALJ again denied the Plaintiff DIB claim, finding Plaintiff was not disabled as defined under the Social Security Act. (Tr. 33). Plaintiff again filed a Request for Review of Hearing Decision. (Tr. 18). On May 27, 2011, the Appeals Council denied the Plaintiff's Request for Review. (Tr. 5). On July 7, 2011, the Plaintiff filed a Complaint in the United States District Court for the Southern

---

[1]     The Appeals Council granted the request for review under the substantial evidence provisions. The Appeals Council found that the ALJ's finding that Plaintiff's limitations had little to no effect on the occupational base was not supported by substantial evidence. Thus the Appeals Council remanded the case to allow the ALJ to obtain evidence from a VE to clarify the effects of Plaintiff's limitations on the Plaintiff's occupational base. (Tr. 319).

District of Florida. (Doc. 1). On September 9, 2011, Plaintiff filed a Motion for Change of Venue, which was unopposed and granted. (Doc. 8 & 9). The instant action followed (Doc. 42) and the matter has been fully briefed and referred to the undersigned for issuance of a Report and Recommendation.

### B.      Standard of Review

The scope of this Court's Review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richards v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1426, 1439 (11th Cir. 1997); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

In evaluating whether a claimant is disabled, the ALJ must follow the five step inquiry described in 20 C.F.R. §§ 404.1520(a), 404.920(a). In the first step the ALJ will consider if the claimant has engaged in any substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). If the claimant is found to be engaging in substantial gainful activity she is not disabled. 20 C.F.R. §1520(b).

The second step requires the ALJ to evaluate the severity of the impairment(s) the claimant is alleging. 20 C.F.R. §1520(a)(4)(ii). If the claimant's impairment(s) does not significantly limit her physical or mental  ability to do basic work activities, the ALJ will find that the impairment is not severe, therefore the claimant will be found not disabled. 20 C.F.R. §1520(c).

The third step of the evaluation also considers the severity of the impairment(s). 20 C.F.R. §1520(a)(4)(iii).  If the claimant's impairment(s) meets the duration requirement and is listed in

appendix 1, or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. §1520(d).

At the fourth step, the ALJ will consider the claimant's residual functional capacity and her past relevant work. 20 C.F.R. §1520(a)(4)(iv). If the claimant can still do her past relevant work then she will not be found disabled. *Id*.

The fifth step considers the residual functional capacity as well as the age, education, and work experience of the claimant to see if she can make an adjustment to other work. 20 C.F.R. §1520(a)(4)(v). If the claimant is able to make an adjustment she will found to not be disabled. *Id*. The Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as fact finder, and even if the reviewer finds that a preponderance of evidence goes against the Commissioner's decision. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The District Court may not " . . . decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## II. Review of Facts

### A. Background Facts

At the time of the ALJ's opinion Plaintiff was sixty-one (61) years of age. Plaintiff has a high school education obtained in her native country of Colombia and a GED obtained in Illinois. (Tr. 313). She last worked in July 2002 as a day care worker taking care of infants between six weeks to six months of age. *Id*. Plaintiff has also worked at the Chrysler Corporation as an assembly worker and

as a teacher's aide. *Id*. Plaintiff stopped working in July 2002 because her mother became ill and she went to take care of her. (Tr. 466). Her mother passed away and within five months her son also passed away in an automobile accident. (Tr. 27). Plaintiff's alleged disability began on November 5, 2003. (Tr. 466). Her alleged disabling condition is Major Depressive Disorder resulting from the passing of two immediate family members within a short period of time. (Tr. 466). Plaintiff has not worked since July 2002 prior to her onset date. (Tr. 447)

**B.    The ALJ's Findings**

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2007, and had not engaged in substantial gainful activity during the period of her alleged onset date of November 5, 2003, through her date last insured. (Tr. 25).

At step two, the ALJ found Plaintiff had the severe impairment of: Affective (Mood) Disorder. (Tr. 25). The ALJ made these findings after reviewing the medical evidence on record, and determined that this impairment has more than a minimal effect on the Plaintiff's ability to perform basic work-related activities, and is therefore considered "severe" as defined by the Social Security Regulations. *Id*.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 25). In making his findings, the ALJ considered whether the "paragraph B" and "paragraph C" criteria of listing 12.04 were met. (Tr. 25-26) The ALJ found Plaintiff did not meet the "paragraph B" criteria because the Plaintiff's mental impairment has not caused at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration. (Tr. 26). The ALJ explained that a "marked" limitation was one that was "more than

moderate but less than extreme." (Tr. 26). The ALJ found Plaintiff did not meet the "paragraph C" criteria of section 12.04 because "she does not have a medically documented history of a chronic affective disorder lasting at least two years that has caused more than minimal limitations on her ability to perform basic work activities with symptoms or signs being treated with medication or psychological support and (1) extended repeated episodes of decompensation; or (2) a residual disease process that results in the Plaintiff's decompensation from even a minimal increase in mental demands or changes in the environment; or (3) a current history of one or more years of being unable to function outside a highly supportive living arrangement with signs of continued need of such living arrangement." (Tr. 26-27).

At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), except she was able to move fifty pounds occasionally, and twenty-five pounds frequently and she was able to sit, stand, and/or walk for six hours out of an eight hour work day. (Tr. 28). Plaintiff did not have any postural, manipulative, visual, communicative, or environmental limitation. *Id*. The ALJ concluded that Plaintiff's retained the following mental capabilities: understanding, remembering, and carrying out simple instructions; making simple work-related decisions; responding appropriately to the work environment including supervisors and co-workers; and coping with routine changes in the work setting. (Tr. 28-29).

At step five, the ALJ found Plaintiff was able to perform her past relevant work as a day care worker. (Tr. 31). The ALJ consulted an impartial VE who testified that Plaintiff's past relevant work as a day care worker was considered light in exertion and semi-skilled. (Tr. 32). The ALJ asked the VE whether under the limitations found in step four, Plaintiff would be able to perform her past relevant work as a day care worker. The VE answered in the affirmative. *Id*. The ALJ went on to ask

whether there were jobs in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. *Id*. The VE testified that Plaintiff would be able to perform the requirements of several occupations including: Hand Packager, Salvage Laborer, Agricultural Produce Packager and Mail Clerk; all of which are found in prevalent numbers throughout the national economy. *Id*. Thus, the ALJ concluded that during the alleged disability period of November 2003 through December 2007 Plaintiff was not disabled. (Tr. 33).

### C.   Plaintiff's Medical History

According to Plaintiff, she had a history of depression, without suicidal ideations, that has been treated and closely monitored by a psychiatrist since 1990. (Tr. 368). Plaintiff's alleged disability began on November 5, 2003. (Tr. 466). It is alleged that Plaintiff's disability was due to the tragic circumstances of her mother and son passing within a five month period. (Tr. 27).

During the years 2003 and 2004, Plaintiff was under the supervision of psychiatrist, Dr. William J. Gaikas, whom she visited on a monthly basis. (Tr. 466).

From 2005 to 2006 she began to see Dr. Magaly Alonso in Miami, whom she visited every three months at first and then once monthly. (Tr. 467).

Plaintiff has also been under supervision on previous occasions for mild renal failure, borderline anemia, a left hepatic benign cyst, hyperlipidemia, osteopenia, hiatal hernia, gastroesophical reflux disease and hypertension. (Tr. 368). Additionally, Plaintiff has a past history of asthma, and was also a smoker many years ago. *Id*.

Plaintiff's prescription regimen includes: 0.5 mg of Xanax twice daily; 150 mg daily of Zoloft and 10 mg daily at bedtime; 300 mg daily in the morning of Wellburtin XL; 35 mg weekly in the

morning of Actonel; 5 mg daily of Norvasc; 20 mg daily of Omeprazole; Oscal-D 500 three times a day with food; and 40 mg daily with dinner of Simvastatin. *Id*.

### D.     Medical Evidence

For the period of December 11, 2003, through October 12, 2004, the Plaintiff was under the supervision of Dr. Gaikas of Rockford Psychiatric Medical Services[2]. (Tr. 190 - 207). Dr. Gaikas evaluated Plaintiff for the alleged symptoms of "no energy, anxiety rating at eight out of ten, sweaty hands, low libido and forgetfulness." (Tr. 196). Dr. Gaikas diagnosed Plaintiff with Major Depressive Disorder, Recurrent, Moderate. *Id*. Dr. Gaikas prescribed Plaintiff Ambien to help with her sleep discomfort, as well as Wellbutrin and Xanax to help with her other symptoms of Moderate Depressive Disorder. (Tr. 197 - 198). Plaintiff was advised to continue her Zoloft regimen. (Tr. 198).

On February 12, 2004, Plaintiff reported feeling somewhat better on her current medication regimen. (Tr. 195). Plaintiff reported "sleeping better, her anxiety decreased to a rating of five out of ten and her depression level also rated at five out of ten.*" Id*. Dr. Gaikas increased her prescription of Xanax from twice daily to three times a day and ordered a follow up in one month. *Id*. In March 2004, Plaintiff reported feeling "moderately anxious and reported struggling with headaches." *Id*. Dr. Gaikas reduced her prescription for Wellbutrin to 150 mg from 300mg because he opined that it was the cause of the anxiety and headaches. *Id*. On her following visit in April 2004, Plaintiff reported feeling "moderately dysphoric, fewer crying spells, and an anxiety level rating at four out of ten." (Tr. 194). Plaintiff also reported "occasional periods of elevated anxiety and one occasion of a panic attack." *Id.* As a result, Dr. Gaikas increased her prescription of Zoloft from 100 mg to 150 mg. *Id*. By her June

---

[2]       Plaintiff's Brief (Doc. 42) indicates her initial visit with Dr. Gaikas was on November 3, 2003, two days prior to her disability onset, nonetheless the medical evidence provided in the transcript does not contain any evidence or doctors notes from that date.

2004 appointment with Dr. Gaikas, Plaintiff reported feeling "much less depressed with a rating of four out of ten and her affect was brighter and more reactive." *Id*. Dr. Gaikas increased her Zoloft once again to 200 mg and diagnosed Plaintiff as being in partial remission. *Id*.

In August 2004, Plaintiff's "affect was very bright and reactive and her mood was stable and euthymic." (Tr. 193). She reported to Dr. Gaikas that "she and her husband [were planning on moving] to Miami to be closer to her family as soon as their house sold." *Id*. Dr. Gaikas advised Plaintiff he would refill her prescription but she would need to follow-up with a psychiatrist in Miami. *Id*. At that point Dr. Gaikas diagnosed the Plaintiff as being in complete remission. *Id*. On her final visit with Dr. Gaikas on October 12, 2004, Plaintiff reported feeling "somewhat dysphoric but attributed it to the stress of moving and having found some of her deceased son's belongings during the moving process." (Tr. 192). Dr. Gaikas provided her with a three month prescription for each of her medications and advised her to schedule an appointment with a psychiatrist in Miami as soon as possible. *Id*.

On January 10, 2005, Plaintiff visited Dr. Mauricio A. Salazar complaining of disturbed sleep, early morning awakenings, hot flashes and sweating. (Tr. 225). Plaintiff was diagnosed with Menopause syndrome, osteoarthritis and depression. (Tr. 227). Dr. Salazar referred Plaintiff to a psychiatrist for evaluation of her depression symptoms. *Id*. Additionally, Dr. Salazar ordered the Plaintiff to have x-rays taken of her abdomen. *Id*. On her follow up appointment with Dr. Salazar, Plaintiff was found to have a hiatal hernia as well as mild acid reflux. (Tr. 224). Plaintiff continued to visit Dr. Salazar for treatment of other health related issues, including the hiatal hernia and hyperlipedimia, through November of 2011. (Tr. 208-222).

Plaintiff began receiving psychiatric treatment from Alonso & Alonso, M.D., P.A., on February 2, 2005, and continued treatment with them through May 2009. (Tr. 176 - 185). On the initial evaluation psychiatrist Dr. Magaly Alonso diagnosed the Plaintiff with Major Depression Disorder, Recurrent, Mild and advised her to continue her medication regimen. (Tr. 185). During the initial visit, Dr. Alonso indicated in Axis V a GAF rating of 79. *Id*. On November 7, 2005, Dr. Alonso changed her diagnosis from Major Depression Disorder Mild to Moderate. (Tr. 184). Throughout their evaluations, both Dr. Magaly Alonso, M.D., and Dr. Leonardo Alonso, M.D., consistently diagnosed Plaintiff with Major Depression Disorder, Recurrent, ranging from Mild to Moderate. (Tr. 176 - 185). During her treatment with the Alonso offices Plaintiff continued the previous psychotrophic medication regimen with a slight increase in dosage. *Id*.

On May 28, 2009, Dr. Leonardo Alonso gave a Sworn Statement at the request of Plaintiff's counsel. (Tr. 381). Dr. Alonso was solely questioned by Mr. Robert Gutierrez of the Lieberman & Gutierrez law firm, in reference to the Plaintiff's disability claim. (Tr. 381- 399). Dr. Alonso confirmed that Plaintiff met the DSM-IV (Manual of Mental Disorders) requirements for Major Depression Disorder Recurrent because she has "neurovegetative signs of depression, anhedonia and poor concentration." (Tr. 384). The doctor went on to say Plaintiff "has not been able to function in public and has not maintained a job since he began treatment with her." *Id*. Additionally, Dr. Alonso stated that the Plaintiff also experienced "sleeplessness, anxiety when she goes outside, high levels of fear and panic episodes." (Tr. 385). Dr. Alonso also confirmed Plaintiff has always been compliant with her medication regimen and stated her last known psychotrophic medications as "Zoloft 150 milligrams, Wellbutrin 300 milligrams, Ambien 10 milligrams and Xanax .5 milligrams twice a day." (Tr. 385).

Dr. Alonso was then asked to categorize from "good to marked" her ability to perform work activities on a regular 40-hour week, eight-hour work day, competitive employment[3]. (Tr. 387). In response to her 'ability to understand, carry out and remember simple tasks," the doctor rated the Plaintiff "fair." *Id*. In response to her "ability to perform simple tasks," the doctor rated the Plaintiff "poor." (Tr. 388). In response to her "ability to independently perform routine, repetitive tasks; ability to sustain concentration to tasks; and ability to sustain attention to tasks," the doctor rated the Plaintiff "marked." *Id*. In response to her "ability to use judgment," Dr. Alonso rated the Plaintiff "fair." *Id*. In response to her "ability to achieve goals and respond to time limits; her ability to perform work requiring regular contact with other people; and her ability to relate to supervisors and coworkers," the doctor rated the Plaintiff "marked." *Id*. In response to the Plaintiff's "ability to relate appropriately to the public and to maintain socially appropriate behavior and adherence to basic standards of neatness and cleanliness," the doctor rated her "fair." (Tr. 389). In response to her "ability to respond promptly to changes in a routine work setting; her ability to respond appropriately to the stress of customary work pressures; her ability to maintain production standards; her ability to make simple work-related decisions; her ability to maintain regular attendance; and her ability to be punctual within customary tolerance" the doctor rated Plaintiff as "severe or marked." (Tr. 389-390).

Dr. Alonso advised he disagreed with the ALJ's determination that Plaintiff could perform simple routine repetitive tasks on a sustained basis because her "motor functioning is impaired by her depressed condition as well as the medication she is prescribed for the treatment of her condition."

---

[3] Rating terms: *Good*, meaning there is an ability to function in the area that is more than satisfactory; *fair*, meaning that there is an impairment of more than slight importance which affects but does not preclude performance; *poor*, meaning that there is an impairment which seriously and significantly interferes with her ability to perform basic work activities independently, appropriately and effectively; and *marked*, meaning that there is an extreme impairment of ability to function in that particular area.(Tr. 387).

(Tr. 390). When asked what would happen to Plaintiff if she were to attempt to perform simple tasks on a sustained basis, Dr. Alonso concluded "she would be missing a lot of work and would not be able to keep up with deadlines and would require extra time." (Tr. 391). When asked whether the Plaintiff's condition met the listing 12.04 definition of Affective Mood Disorder, the doctor opined that "Plaintiff's symptoms met the criteria." (Tr. 393).

From November of 2006 through February of 2007, the Plaintiff consulted five times with Dr. Vivian A. Perez Psy.D., after referral from her insurance company. (Tr. 187). At the initial consultation, Dr. Perez diagnosed Plaintiff with "Major Depression, Recurrent" but noting 296.36 of the DSM-IV indicating full remission. *Id*. Nonetheless, Dr. Perez assessed the Plaintiff as having a GAF rating of 45. *Id*. In December, 7, 2008, Dr. Perez discussed setting goals for improvement. Dr. Perez indicated Plaintiff was a "little better" at this appointment and was trying to increase her activities outside the home.(Tr. 188). Two weeks later Plaintiff indicated to Dr. Perez that "her depression had decreased and she was making efforts to be more active and walking more." *Id*. In January 2007, due to the approaching anniversary of her son's death, Plaintiff report feeling anxious. *Id*. In April 2007, Dr. Perez noted Plaintiff stopped contact and closed Plaintiff's file. (Tr. 189).

Upon request of the State agency, Plaintiff received a consultative psychological examination by Dr. Brenda I. Rivera Psy.D., on July 12, 2006. (Tr. 284-286). Dr. Rivera described the Plaintiff's affect as "tearful and her mood depressed." (Tr. 285). Dr. Rivera concluded that Plaintiff's "immediate memory was fair, remote memory was good, recent recall was fair, calculation was poor, abstract thinking abilities were good, comprehension was good, intellectual functioning appeared to be in average range, concentration and ability to focus were fair, motivation was fair and her in sight and judgment were good." *Id*. Dr. Rivera diagnosed Plaintiff with Major Depressive Disorder, Recurrent,

Severe, without Psychotic Symptoms, Chronic. *Id.* Dr. Rivera concluded that Plaintiff's "symptoms could possibly impair her social skills, her concentration and task persistence; and her symptoms may limit her ability to function in a work-like setting unless her depressive disorder is treated and her symptoms are improved." (Tr. 286).

On April 5, 2006, Cheryl Woodson, a non-examining State agency licensed psychologist, attempted to complete the Psychiatric Review Technique Form. (Tr. 287-299). Ms. Woodson's notes state: " claimant alleges depression. There is some MER in file but additional development is warranted prior to adjudication. Claimant cannot be located not has she made contact with this office. There is insufficient evidence to adjudicate a mental claim at this time." (Tr. 299).

On September 16, 2006, a non-examining State agency psychiatrist, Dr. Lee Reback Psy.D., P.A., completed the Psychiatric Review Technique form finding Plaintiff has a medically determinable impairment that does not precisely satisfy the diagnostic criteria set out in the form. (Tr. 269). Dr. Reback found Plaintiff has "mild limitations on her activities of daily living and maintaining social functioning and moderate limitations in maintaining concentration, persistence, or pace." (Tr. 276). Further, Dr. Reback found Plaintiff "had no episodes of decompensation each of extended duration." (Tr. 276). Dr. Reback also completed the Mental Residual Functional Capacity Assessment Form where she noted " moderate limitations in the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal work-day or week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to respond appropriately to changes

in the work setting." (Tr. 278-279). Dr. Reback concluded that "given [the claimant's] current clinical presentation, the claimant seems capable of simple and routine activities." (Tr. 282).

On September 26, 2006, Cal VanderPlate, a non-examining State agency medical consultant, completed the Medical Consultant's Review of Psychiatric Review Technique Form in which he agreed with Dr. Reback's findings. (Tr.262-265). Mr. VanderPlate concluded that Plaintiff was "capable of understanding and remember at least simple work-like instructions;" Plaintiff had the "ability to carry out simple tasks, maintain attention and concentration for at least two hours, and complete a normal work week without problems;" Plaintiff had the "ability to relate appropriately to others, accept supervision and work adequately with coworkers;" and Plaintiff's "adaptive skills are intact and claimant is able to adjust adequately to changes in the work setting." (Tr. 265).

### E.    Testimony

At the remand hearing held on June 15, 2009, the ALJ, the Plaintiff, an interpreter, an impartial VE and Plaintiff's counsel were present. (Tr. 459). Plaintiff was asked how far she had gotten in school, to which she responded receiving a GED in Radford, Illinois. (Tr. 462). The ALJ determined that she should understand the language if she received a GED and agreed to repeat or rephrase if she had any difficulty in understanding his questions. (Tr. 462). The ALJ asked the Plaintiff the type of work in which she has engaged in the past and Plaintiff responded that she has worked as a day care worker, a factory worker and post office worker. (Tr. 463). The record indicates Plaintiff has only worked as a day care worker for the relevant period of fifteen years. (Tr. 464-465).

Plaintiff stopped working in July 2002, to take care of her terminally ill mother, and within five months of her mother's death her son passed away on January 18, 2003, in an automobile accident. (Tr. 466). Consequently, Plaintiff fell into a deep depressive state which she has allegedly not emerged

from since. (Tr. 466). Plaintiff testified that after her son died and "all the paperwork and everything stopped," her depression started and she could not continue working. (Tr. 473). When asked how often she saw a doctor in the years 2003 and 2004 and what treatment she received, Plaintiff stated she started seeing a psychiatrist every two weeks at the end of 2003. (Tr. 466). Then she started seeing Dr. Alonso in 2005 every three months and then monthly through 2006. (Tr. 466-467). Plaintiff testified to having psychiatrist appointments on a monthly basis during 2007 and 2008. (Tr. 467). In 2009, Plaintiff saw a psychiatrist monthly until her insurance would no longer cover the cost. (Tr. 467). Plaintiff stated she has been receiving individual therapy as well as prescriptions to treat her symptoms. (Tr. 467). Plaintiff recited her medications as Zoloft, Wellbutrin, Xanax, and Ambien. (Tr. 467). She also stated she takes medications for high blood pressure, cholesterol, acid reflux, and osteoporosis. (Tr. 467).

Plaintiff testified that she had no problems walking, standing, sitting, or lifting. (Tr. 468). When asked if she could go back to work as day care assistant, Plaintiff testified that she could not because "I forget, I can't care for a baby." (Tr. 473). The ALJ then asked how long she had been forgetting, since she remembered all of the medications she was prescribed. (Tr. 474). Plaintiff responded that she was able to remember her medication because "I have it written down in my purse" and "I was reading it outside." (Tr. 474). When asked whether she remembered to take her medication, Plaintiff responded that she did and her husband also helps prepare her medications every eight days.(Tr. 474). Plaintiff then testified that she was able to remember things she read only if she was interested in what she was reading. (Tr. 475).

Plaintiff testified that she does no work around the house, instead her husband takes care of everything for her. (Tr. 469-470).  Plaintiff stated that she has a driver's license but has not driven in

three years. (Tr. 468). Plaintiff does not exercise and only occasionally watches court tv and reads the newspaper. (Tr. 470-471).

At the hearing, impartial vocational expert, Mr. Nicholas Fidanza, testified. (Tr. 481-89). The ALJ asked the VE whether "Plaintiff was able to perform any past relevant work, and to classify it in terms of skills and exertional level." The VE responded, "Plaintiff could perform her past relevant work as a day care worker which is classified in the DOT at number 359.677-018, considered light physical demand work, with an SVP of four, meaning it is semi-skilled." (Tr. 481). The ALJ posed a hypothetical question asking the VE to identify three medium and three light jobs Plaintiff could perform given the Plaintiff's RFC. (Tr. 481-82). The VE testified given the hypothetical that Plaintiff would be able to perform as a "hand packager, salvage laborer and agricultural product packager" all of medium exertion. (Tr. 482-83). He also testified Plaintiff would be able to perform as a "mail clerk, electronics worker, and  small product assembly" all of light exertion. (Tr. 483-84). The Plaintiff's attorney then questioned the VE concerning the level of skill required for these jobs. (Tr. 484). The VE identified these jobs as unskilled. *Id*. Plaintiff's attorney then asked the VE "if Plaintiff were to be moderately limited in persistence, pace and concentration, to the point that she would not be able to perform, if she would still be able to perform her past relevant work?" (Tr. 485-86). The VE expert responded she would not. Plaintiff's attorney went on to ask whether given the facts in Dr. Alonso's sworn statement "would Plaintiff be able to perform her past work or any other work?" (Tr. 488). The VE responded she would not. *Id*.

### III.    Specific Issues and Conclusions of Law

Plaintiff raises four issues on appeal. As stated by Plaintiff, they are: (1) the ALJ's stated reasons for rejecting the opinion of Dr. Alonso Plaintiff's long time treating psychiatrist are not based

on substantial evidence; (2) Given the Plaintiff's limit to unskilled work, she cannot return to her past relevant semi-skilled work as a day care worker as found by the ALJ; (3) the ALJ's credibility finding is not based on substantial evidence; and, (4) the ALJ's alternate findings that there are other jobs in the national economy that Plaintiff could perform cannot be sustained since the ALJ relied on the VE's response to a hypothetical question which failed to account for all of the limitations supported by the record.

**A.      Whether the ALJ's stated reason for rejecting the opinion of Plaintiff's treating psychiatrist is based on substantial evidence.**

Plaintiff argues that the ALJ committed error by giving greater weight to the testimony of a State agency non-examining medical consultant, instead of Plaintiff's treating psychiatrist Dr. Alonso. Plaintiff further argues, that the ALJ's reasons for rejecting Dr. Alonso's opinions are not based on substantial evidence and that the assessments of the State agency psychological consultants cannot provide the requisite good cause for rejecting Dr. Alonso's opinion because they are outdated.

The Eleventh Circuit has held that the ALJ must ordinarily give substantial or considerable weight to a treating physicians testimony unless "good cause" is shown to decide otherwise. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ must clearly state the reasons for rejecting the treating physicians opinion, failure to do so is reversible error. *Id*. The Eleventh Circuit has found "good cause" to weigh against the opinion of a treating physician when the doctors opinion is not supported by the evidence, when the evidence supports a contrary finding or when the doctor's opinions are conclusory or inconsistent with his own record. *Id*. "In making a disability determination, the Regulations specify that, where the evidence in the record is inconsistent, all of the evidence will be weighed to see if the Claimant is disabled." *Pettus v. Astrue*, 226 Fed. Appx. 946, 949 (11th Cir. 2007). RFC determinations are made based on the entire record of medical and other evidence. *Id*.

In the instant case the ALJ gave little weight to the Dr. Alonso's opinion, Plaintiff's treating psychiatrist, because his sworn statement is contrary to other evidence on record, including his own clinical findings for good to fair memory and concentration. (Tr. 31). After considering the evidence as a whole the ALJ determined that although he finds that the claimant's medically determinable impairment could reasonably cause the alleged symptoms, the intensity, persistence and limiting effects of those symptoms are not credible. (Tr. 30).

In determining Plaintiff's RFC, the ALJ considered all of the evidence on record. (Tr. 28, 30-31). The ALJ found that through the date last insured, the Plaintiff had the RFC to perform medium work. (Tr. 28). The ALJ determined that the Plaintiff retained the mental capacity to understand, remember and carry out simple instructions; make simple work-related decisions; respond well to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. (Tr. 28-29).

In support of his findings, the ALJ determined that contrary to Dr. Alonso's statements, the medical evidence does not depict any high levels of psychotrophic medications that would render the Plaintiff unable to work, and Plaintiff herself consistently denied any side effects to her medications. (Tr. 30). In his first evaluation of Plaintiff, Dr. Alonso diagnosed the Plaintiff with mild, Major Depressive Disorder with a GAF rating of 79.(Tr. 185) Two years later in 2007, Dr. Alonso reported that Plaintiff's judgment, insight, concentration and memory were all in good to fair condition. (Tr. 178). Dr. Alonso also noted that Plaintiff was well oriented, cooperative and had no hallucinations or delusions. (Tr. 178).

The ALJ went on to state, "[a]lthough she claims a bad memory, she recited the names of all of the medications she takes." (Tr. 30). Additionally, Dr. Alonso stated in his Sworn Statement that

Plaintiff has not been able to function in a job or social setting since he started seeing her, although Plaintiff wrote that she attended weekly church services.(Tr.137). Further, the ALJ stated the record indicated an overall ability to maintain concentrated task-oriented mental activity despite the Plaintiff's allegations. (Tr. 30). In support of his statement, the ALJ stated that "there is nothing in the medical file that [supports the finding that Plaintiff's] condition causes cognitive limitation[s] that would preclude understanding, remembering, and performing simple repetitive, routine instructions and tasks." (Tr. 30-31). In addition, prior to her move to Florida, Dr. Gaikas, Plaintiff's psychiatrist, reported that her major depressive disorder was in complete remission. (Tr. 31, 193).

Plaintiff argues further that Dr. Alonso's medical record is consistent with the opinions in his Sworn Statement. Nonetheless, the record indicates that throughout his observations of the Plaintiff from her February 2005, November 2005, and February 2006 visits, he consistently reported the Plaintiff to be well groomed, alert, well oriented with coherent speech, intact memory, judgment, and insight, adequate impulse control, and no delusions, hallucinations or thoughts of harm to herself or others. (Tr. 183-185). Although Dr. Alonso's notes from October 2006 and March, June, and September 2007 are generally illegible, they all consistently note Plaintiff to be alert and fully oriented with no delusions, hallucinations, or thoughts of harm to herself or others. (Tr. 178-182). Thus, Dr. Alonso's Sworn Statement indicating that Plaintiff had marked or poor limitations in almost all work-related areas cannot be sustained by the record as a whole, including his own medical record.

Additionally, Plaintiff argues that the ALJ based all of his RFC findings solely on the opinions of the State agency medical psychologist consultant who last reviewed the case in September 2006. Plaintiff further alleges that the evaluations of the State agency consultants were only based on Dr. Rivera's consultative examination and did not account for the medical evidence on record, such as

medical records from Dr. Alonso. However the record does sustain the opinions of the State agency medical psychologist consultants. Although the Eleventh circuit has held that the opinion of a reviewing, non-examining physician cannot by itself constitute substantial weight to contradict the opinion of treating physician. *Sharfarz v. Bowen*, 825 F.2d 278, 280. The Eleventh Circuit has stated repeatedly that the ALJ may reject any medical opinion if the evidence as a whole supports a contrary finding. *Id*.

In this case, the ALJ rejected Plaintiff's treating psychiatrist's opinion not solely on the opinion of State agency medical psychologist consultant but rather on the evidence as a whole. In his sworn statement, Dr. Alonso stated that in order for the Plaintiff's condition to improve she required more intensive mental health treatment and that her insurance would not cover it. (Tr. 386). On the contrary, the record shows Plaintiff's insurance company referred her to Dr. Vivian A. Perez for psychological therapy. (Tr. 187). Dr. Perez noted improvement of Plaintiff's condition, but after only five consultations Plaintiff made no further efforts to contact Dr. Perez. (Tr. 187-189).

At Plaintiff's initial appointment with Dr. Perez, she indicated a DSM-IV listing of 296.36 indicative of Major Depressive Disorder, Recurrent, in Full Remission but giving Plaintiff a GAF of 45. (Tr. 187). On her follow up appointment, the doctor indicated that Plaintiff was "a little better today," they discussed a plan of setting goals and increasing activities outside the home. (Tr. 188). On her December 2006 appointment Plaintiff reported increasing her activities, walking daily, and discussed how the holidays would be difficult. (Tr. 188). On her January 2007 appointment Plaintiff was tearful and anxious due to the approaching anniversary of her son's death. (Tr. 188). In February, Plaintiff was reportedly doing much better and reported decreased depression, remaining active and taking her medications as prescribed. (Tr. 189). In April, after two months of no contact from Plaintiff,

Dr. Perez closed her file. (Tr. 189). Dr. Perez's notes are indicative of improving conditions in Plaintiff's depression prior to her voluntary termination of treatment. In December 2007, Plaintiff saw Dr. Alonso who indicated a fair prognosis. (Tr. 177).

Based on the forgoing, the ALJ's decision to reject Dr. Alonso's Sworn Statement and give his opinion little weight is supported by substantial evidence. Contrary to the argument made by Plaintiff, the ALJ did provide reasons for rejecting Dr. Alonso's opinion. As stated in the regulations, "[a]lthough we consider opinions from medical sources on issues such as whether your impairment[] meets . . . the requirements of any impairment[] in the Listings . . . , the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. 404.1527(d)(2).

**B.      Whether given Plaintiff's limitation to unskilled work she is able to return to her past relevant semi-skilled work as a Day Care Worker.**

Plaintiff argues that the ALJ's finding that Plaintiff retains the RFC to perform unskilled work, conflicts with the ALJ's additional findings that through the date last insured Plaintiff would be able to perform her past relevant work as a day care worker, a job classified as light and semi-skilled.

In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1180-81 (11th Cir. 2011), the Eleventh Circuit addresses for the first time whether the ALJ must account for the claimants limitations in asking a VE a hypothetical question. The Court held that the ALJ must either: limit the hypothetical question to unskilled work when the medical evidence indicates that the claimant is able to perform simple, routine tasks or unskilled work despite limitations in concentration, persistence or pace; or implicitly or explicitly account for the claimants limitations in the hypothetical question posed to the VE. *Id*.

It is clear that the ALJ in the instant case comported with the standards set out in *Winschel*. (Tr. 481-84). During the hearing, the ALJ listened to the testimony of an independent VE who testified that although Plaintiff's past relevant work as a day care worker is classified as semi-skilled, she retained the RFC to perform that job. (Tr. 481-82). Prior to posing the question to the VE, the ALJ listed and explained Plaintiff's limitations including her "moderate limitations in concentration, persistence and pace." (Tr. 482). In his opinion, the ALJ summarized the responsibilities and demands of performing as a day care worker. (Tr. 32).

Although the ALJ concluded that Plaintiff retained the mental capabilities commensurate with the functions of unskilled work, he also concluded that Plaintiff was capable of performing medium work. (Tr. 28). The ALJ stated Plaintiff was able to lift or carry fifty pounds occasionally, and lift or carry twenty-five pounds frequently. (Tr. 28). Additionally, Plaintiff does not have any physical limitations. (Tr. 28). She has no postural, manipulative, visual, communicative or environmental limitations. (Tr. 28). The ALJ's decision was based on the medical evidence provided as well as the opinion of the qualified impartial vocational expert.

## C.     Whether the ALJ's credibility findings are based on substantial evidence.

Plaintiff argues that the ALJ's determination that the severity of Plaintiff's limitations are not credible to the extent that they are inconsistent with his RFC finding is not based on substantial evidence. Additionally, Plaintiff argues that the ALJ cited selectively from the record and improperly substituted his own judgment for that of the medical experts.

When making a finding on disability based on testimony of pain or other subjective symptoms, a Plaintiff is required to (1) produce evidence of an underlying medical condition and (2) either

produce objective medical evidence (a) confirming the severity of the alleged symptoms; or (b) indicating that the objectively determined medical condition can reasonable give rise to the severity of the claimed symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the ALJ finds the claimants allegations not credible, he should explain why. *Id*.

In the instant case, Plaintiff's alleged symptoms are subjective, therefore making a credibility finding critical to the case. Although the ALJ concedes that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms," he did not find Plaintiff's statements concerning the "intensity, persistence and limiting effect of the symptoms" credible nor did he find that the objectively determined medical evidence reasonably supported the claimed symptoms. (Tr. 30).  The ALJ in this case has articulated his reasons for finding that the severity of Plaintiff's alleged symptoms are not credible. The ALJ first addresses Dr. Alonso's statements referring to the disabling effects of the drugs prescribed to the Plaintiff. (Tr. 30, 390). The ALJ explains Plaintiff is not prescribed levels of psychotrophic medications that would preclude the Plaintiff from working.(Tr. 30). The medical evidence consistently notes denials of side-effects to her medications. (Tr. 30). Additionally, he explains Plaintiff has at no point been hospitalized or internalized in a mental institution due to the symptoms of her depression. (Tr. 30).

The medical evidence also establishes that prior to her move to Florida, Plaintiff was found to be in full remission of her depression disorder by Dr. Gaikas. (Tr. 193). Further, Plaintiff did not seek psychiatric help from October 2004 until February 2005, when she began her treatment with the Alonso office.(Tr. 192, 185). At her initial consultation with Dr. Alonso, Plaintiff was diagnosed with Major Depressive Disorder, Recurrent, Mild with a GAF of 79. (Tr. 185).

Additionally, her visits with Dr. Perez indicated that Plaintiff was improving in her depression and was making improvements in her daily activities. (Tr. 186-189). During Plaintiff's short treatment with Dr. Perez, Plaintiff began to increase activities outside of the home and reported a decrease in depression in December 2006 and February 2007. (Tr. 188- 189). Although Plaintiff was improving with the psychotherapy provided by Dr. Perez, she voluntarily discontinued the treatment. (Tr. 189). Plaintiff's decision to discontinue treatment is supportive of the ALJ's credibility finding that "the evidence as a whole does not substantiate any good cause for such inactivity, apart from the claimant's own preference, her chosen style." (Tr. 31). The ALJ in this case articulated many reasons for finding Plaintiff not credible as stated above and the record supports such opinion.

**D.     Whether there is substantial evidence to support the ALJ's finding that Plaintiff's mental impairments did not prevent Plaintiff from returning to day care work or performing a significant number of other jobs in the national economy.**

The Eleventh circuit has held that, to find a claimant capable of working despite a step two or three finding of moderate limitations in maintaining concentration, persistence, or pace, the ALJ must: (1) indicate that medical evidence suggests that the claimant can work despite the limitations, or (2) explicitly or implicitly account for the claimant's limitations in a hypothetical questions to a VE. *Winschel*, 631 F.3d at 1180-81.

In the instant case, the ALJ followed the standard set out in *Winschel* because he specifically discussed medical evidence provided by Drs. Giakas, Alonso, and Rivera, as well as the assessments of the state agency psychologist, all of which indicated Plaintiff could work despite her mental limitations. (Tr. 25-32). As discussed in the first issue section above, there is substantial evidence to support the ALJ's finding that Plaintiff could return to day care work or do

other work, despite her limitations in maintaining concentration, persistence, or pace. *Id*. Plaintiff's own reports of her daily activities, also discussed above, additionally support the ALJ's RFC findings.

The ALJ's finding, that Plaintiff's moderate limitations in concentration, persistence, or pace did not significantly affect the vocational base of her past relevant work as a day care worker, was proper because he relied on the VE's response to a hypothetical question that included those limitations. (Tr. 31-32, 482). As an alternative the ALJ also found Plaintiff could perform a variety of unskilled jobs identified by the VE in response to the same hypothetical question. (Tr. 32-33, 482-484). As noted in *Winschel*, limiting the Plaintiff to unskilled work sufficiently accounted for moderate limitations in concentration, persistence and pace. *Winschel,* 631 F.3d at 1180.

Plaintiff further argues, that the ALJ's definition of moderate limitations as "moderate in that area but is still capable of performing satisfactorily," (Tr. 482) is misleading and equivalent to the definition for mild limitations. (Doc. 42 at 23). However, according to the Social Security guidelines moderate is defined as moderate in that area, but still able to function satisfactorily. *Correll v. Commissioner of Social Security*, No. 6:08-cv-208-Orl-GJK, 2009 WL 1587404, at 3 (M.D.Fla. June 5, 2009) (unpublished). Although the VE expert may have agreed with Plaintiff's counsel in finding that the definition was similar to that of mild limitations, this District has consistently applied that or similar definitions in its proceedings. [4] Therefore, the ALJ properly found Plaintiff is not disable because she is capable of performing her past relevant work as a day

---

[4]        *See also White v. Commissioner of Social Security*, No. 6:09-cv-1208-Orl-28GJK, 2010 WL 3467413, at 8 FN4 (M.D.Fla. Aug. 3, 2010) (unpublished), and *Choate v. Commissioner of Social Security*, No. 3:09-cv-1253-J-12MCR, 2011 WL 1575376, at 5 (M.D.Fla. April 26, 2011) (unpublished).

care worker and there are a significant number of jobs in the national economy that she can perform.

### IV.    Conclusion

The ALJ in this case properly rejected the opinion of Plaintiff's treating psychiatrist because the treating psychiatrist's opinions were not consistent with the evidence on record, and substantial evidence of record supported his decision. The ALJ properly determined Plaintiff was capable of returning to her past relevant work as a day care worker. The ALJ properly found there are other jobs in the national economy that Plaintiff is capable of performing given her limitations.

Accordingly, it is **RESPECTFULLY RECOMMENDED** that:

The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this 30th day of October, 2012.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record